At this point, I'd say please be seated, but I think you already are. We have four cases remaining on our docket for argument this morning, and you all are the first up. Calderon v. City and County of Denver, case number 19-1388. And we are ready to hear from the appellant. Thank you so much, Your Honor. Good morning. My name is Patricia Bangert, and I'm here representing the appellant, Lisa Calderon. We contend that Ms. Calderon has pled a valid First Amendment retaliation claim and a claim of violation of the unconstitutional conditions doctrine. And the judge actually has acknowledged that Ms. Calderon has met the standing requirements of Article III, so the only question here is whether Ms. Calderon can pursue her case in federal court and seek a remedy there. As the district court pointed out, there are really two different approaches or views on the issue of whether an individual can assert a civil rights claim in a case in which the relevant action is directed toward a corporation. And the first set of cases, of course, is Duran and Pagan, and I'll call that the preempted right line of cases. And, of course, in those cases, the court said that the right, the civil right, is possessed by and can only be asserted by the corporation. In the other one... Counsel, isn't your issue here that there's also conduct and action taken against your client, not just against CRP? Absolutely, Your Honor, absolutely. And that is what we're arguing here, is that the action well taken against, or the major action well taken against the corporation is also taken against the individual. And thus, the line of cases that are more appropriate here are the Serrano-Gasco line of cases in... Building the image? I'm sorry, pardon me? Oh, it wasn't from us. I don't know. Go ahead. I apologize, Your Honor. And I'm going to call the axiomatic standing line of cases. And in those cases, the court said that the individual pursuing a civil right has axiomatic standing, basically, that the violation of the civil right is in itself a personal and direct injury to the plaintiff, separate from that of the corporation, and therefore, the individual can assert that right, has standing to assert that right on her own. And specifically, what constitutional rights are you asserting? In this case, Your Honor, it's the First Amendment right, and specifically the right to speech without retaliation from the government, and the right to be free from unconstitutional conditions on the exercise of her speech. Those are the specific rights that are being asserted. I thought you were also asserting 14th Amendment, equal protection. Oh, yes. I'm sorry, Your Honor, and equal protection. We focus so much on the First Amendment right that I neglected to say that. Yes, discrimination, Your Honor, and retaliation for opposing discrimination. I think the really important point here is that the Serrano line of cases, that approach is really more appropriate, but it's also supported by the case law in this circuit. And specifically, as I went into some detail in my brief about, I think Hobby Lobby. And I understand that there was not a majority opinion on standing, and that Judge Briscoe had some issues with the concept of managerial standing. But I think Judge Gorsuch's concurrence is instructive here. And I guess the thing that was most striking was his statement that the Greens were human beings, and as such, had individual rights. And in that case, the rights... I thought part of the impetus behind that thought was the fact that the Greens, if allegedly, if the law were enforced, would be harmed as a business. That is, they're stock and trade. They were out of business if it were no, no, no. But I think it's an important point, Your Honor, that yeah, now Justice Gorsuch did refer to the inability to practice their trade, reciting to Heart of America grain. And I also note that Justice Gorsuch reaffirmed that right in Neiman, Neiman, I'm sorry, several years later. The other case that he referred to, I think, is really important. The more I thought about it, the more important I thought it was, was Grubbs. In Grubbs, this circuit distinguished between Grubbs, the individual as a shareholder and enjoyment of this property. In Grubbs, the court could well have said that the corporation that actually owned the land was the only entity that could bring a suit, but... Well, in Grubbs, it seems that the court did not, we did not go off on prudential standing. In fact, we went right to the merits because we said, well, we don't know about prudential standing, let's look at the merits. So how does that help you here? I think it helps, Your Honor, because the court did not find that it could not even get to the merits of the case. The Grubbs did not have any kind of standing to be there in the first instance. I think the court could have said that it should have been the corporation, and the corporation should have brought the case, but did not take that direction. And I have to agree, Your Honor, there's nothing definitive that came before this in terms of prudential standing in civil rights cases. But I think the cases that have come before direct us to that axiomatic standing approach. I'd also point out that if the court finds that the right to practice trade or the right to enjoy your cabin can give standing, the First Amendment rights in the whole hierarchy of things are much more important. There have been other cases in other circuits that have said that there is leeway or should be leeway in standing, in looking at prudential standing when you're considering First Amendment rights. I'd also, and again, this was on Article III standing, not prudential. Ms. Banger? I'm sorry, Your Honor. Yes. Will you refresh my memory? It's been a while since I've looked at Serrano. Yes, Your Honor. Did Serrano even reference the concept of prudential standing? What Serrano said, Your Honor, and I'm not remembering. Did it use the word prudential standing in its opinion? I'm not sure that it did, Your Honor, but what the court said was that the Serranos in that case had an individual right. They recognized that there was a distinct and individual right, and I think that's it at the heart of this matter. Does Ms. Calderon have an individual right that she can assert in this court? I'm sorry, in this- I understand. My question is directed at whether or not they precisely address the prudential standing issue because I don't remember that it was presented. I don't think that they did address prudential standing, Your Honor, the best I remember. I think what they addressed was whether the individuals had a personal and direct injury that they could assert in court. Let me ask you, as to the Heart of America grain inspection, the employees were actually deprived by the state statute, I believe, of being able to practice their own trade, correct? Yes, Your Honor. What has the city of Denver done here to prohibit, generally, your client from practicing her trade? I think that's a really important question, Your Honor. In Heart of America, the employees could not practice their trade in that particular context in terms of weighing grain, but they certainly could have done other things. I think- No, but their trade was weighing grain and they were prohibited from doing so. Ms. Calderon, on the other hand, has numerous professional talents, I assume, and she's not prohibited by whatever Denver did from practicing her profession or using her skills. I think that's an excellent point, Your Honor. I think, though, the injury here is manyfold. The major injury is that her speech has been chilled. She has a very direct and personal interest in being able to criticize the city without having ramifications, without losing her employment. When I talk about employment, I'm not talking about wages. I'm talking about her employment as the executive director of this organization, but also, Your Honor, we're talking about here emotional damages, damage to reputation. Remember that the non-renewal of the contract is not the only damage here. There's also the allegations of sexual misconduct and of loss of reputation, that kind of thing, Your Honor. Well, the allegations of sexual misconduct that you've just referred to, how is that a violation of constitutional rights? That's not a violation of constitutional rights, Your Honor. That is the injury that comes from the violation of constitutional rights, and that is, it's part of the retaliation against Ms. Calderon. I think we confuse, or some of the cases have confused injuries. There's injuries that give standing, and I think the injury that gives standing here is the violation of the civil rights, and then there are the injuries resulting from the violation of the civil rights. Counsel, before we run out of time, I'm interested in your clarifying what exactly the nature of the community re-entry program was. You've referred to a corporation, but was the CRP a corporation? Was it a city entity? Was it a non-profit? I'm just not clear from the materials we have exactly what it was. Yes, Your Honor. CRP was a city program. It was a program that was founded, I don't know, in 2007 or something. Because the city felt, for whatever reason, that it couldn't directly run the program, it hired a fiscal agent. That's the corporation here, to run a city program. And if it's okay, I'd like to reserve a minute for rebuttal, Your Honors. Fine, thank you. Thank you. You're up, Mr. Gorman. Good morning, Your Honors. My name is Edward Gorman, and I represent the city defendants. The fundamental flaw in plaintiff's complaint is that she is bringing claims to vindicate, even though it was CNDC's contract that was not renewed. Although she framed her injuries as distinct and personal to her, the district court was correct in recognizing that they're merely derivative of CNDC's loss of that contract. Well, doesn't she have personal First Amendment rights and personal rights as regards denial of equal protection? Aren't those personal rights? Those are technically personal rights, and the city is not arguing that she has failed to establish Article III standing, as the district court recognized. Our focus is on prudential standing. And the position advocated by Ms. Calderon, that there should be an exception to the prudential standing, third-party standing rule, if a party claims personal constitutional rights, would simply overwhelm and obviate the prudential standing rule. It would essentially swallow the rule. Mr. Gorman, in your brief on page nine, the brief says, plaintiff's complaint makes clear she is asserting her own rights and not those of CRPC and DC. Isn't that just the opposite of seeking third-party standing? Well, if I understand your question, the district court and what the city... No, I want to know what you meant by that sentence in your brief, not what the district court said. What did you mean by that? Sure. So, Your Honor, what we meant was that on the face of the complaint, plaintiff, if you look at her damages paragraph, if you look at her First and Fourteenth Amendment claims, she is asserting that she was injured and she is seeking compensatory and other damages related to her injuries. So, it's clear from the face of the complaint, she is not trying to assert any type of third-party claim. She is not trying to assert any type of derivative claim on behalf of the entity. And it would be a different analysis if she was, but she is asserting claims to vindicate her injuries. So, that was the point that we were trying to make in our brief, Your Honor. All right. I'm still having a little trouble with this. If she's asserting her own claims, she's not asserting a claim on behalf of a third party, is she? What am I missing here? I think the disconnect is even if she classifies her claims as individual and personal to her, and I wouldn't disagree that the First Amendment claims are individual claims, part of the prudential standing analysis still requires the court to determine whether she is really just asserting injuries that are merely derivative of the injury to the entity. And I think that was the point that we attempted to make in our brief and that the district court emphasized as well. These claims are merely derivative of the loss of CNDC's contract. Let me just one other follow-up. The equal protection claim, as I understand it, is an allegation that she was treated differently from male counterparts who run these programs. Now, why wouldn't that not only give her Article 3 standing, but avoid any prudential standing concerns because that is a claim that the city acted directly against her in a discriminatory way? I think the important point that the case law establishes is that political animus, even if it's directed at the individual, is insufficient to establish prudential standing. And we have cases, we have the Guides case from this circuit where the plaintiff owner made a very similar argument, Your Honor. She argued, your discrimination was directed at me because of my race. Now, the district, I believe Judge Briscoe and this circuit disagreed and found that the plaintiff in Guides has not raised a claim that is anything but derivative of the injury to the corporation. So, again, plaintiff can allege individual rights, plaintiff can couch those claims and explain those claims in any way she wishes. Part of the analysis still requires the court on the face of the complaint to determine whether or not those claims are merely derivative of the injury to the corporation. That's part of the analysis. In fact, I would argue that that is the central part of the analysis. And the district court did a very thorough analysis. Mr. Bromley, would you state for this panel what the rule of law is, that there's prudential standing? Would you just state the rule of law? I believe prudential standing, the rule of law is generally a requirement that plaintiff must assert their own legal rights and interests and cannot rest their claim to relief on the legal rights or interests of others. So, it's more, okay, so the claim of the individual must be the same as the claim that another party has in order for prudential standing to deprive them of the right to pursue that claim in federal court. Is that correct? I'm sorry, your honor. Can you repeat the question? Let me state it another way. The defendant, excuse me, the plaintiff is not deprived of the theory of prudential standing unless that plaintiff's claim is the same, in this case, as her previous employer. Well, I'm not, I don't know that I would agree with that, your honor. I think... Well, then you correct it. I think the prudential standing inquiry, I would agree that it is plaintiff-specific, it's claim-specific, but courts do not merely try to match or mismatch the claims. Okay, well, then does that mean you are saying that prudential standing is really a causation issue? And that is, for example, but for the injury, in this case, to the employer, the employee would have no claim. It's called that. And for that reason, prudential standing prohibits her from pursuing that claim. Your honor, I think that that question gets to the definition of derivative. So, even though the claims may be different, if the plaintiff would not have her own individual claim, but for her employer having a separate claim, then she cannot pursue that claim under prudential standing. I think that may go too far. I've never seen a court... Then tell me how you limit that, because it seems that this concept that is called derivative is really a statement of causation and a but-for causation. Your honor, I've never seen a court describe it as but-for causation. In describing the derivative nature of claims, I've heard courts use terms as a consequence of. So, I think it would be very similar to your question. And I think a way of looking at this particular situation, do plaintiff's claims of injury, do her violations of her constitutional rights, are they merely a consequence of CNDC's loss of the contract? Now, on the face of the complaint, the district court said yes and said that there was no suggestion otherwise. And that rule you stated applies, according to your view, even if the claim of the plaintiff in this case is a different claim than the claim that her employer might have. That's correct. Counsel, courts have recognized an exception to the shareholder standing rule and third-party standing rule when the plaintiff alleges a direct personal injury. Why wouldn't that exception apply here? Even if the claim is derivative, if it's a direct personal injury, that hasn't gotten in the way of allowing a case to go forward, or at least to allow that plaintiff to have standing. Well, Your Honor, I think it is helpful, as Ms. Bangert noted, that the line of cases where there's some distinct factual similarities to our facts here, the Padoff case from the Eighth Circuit, the Pagan case from the First Circuit, the unpublished decision in Duran of the Fifth Circuit, where the plaintiffs attempted to advocate the same argument, that they're alleging individual constitutional rights and that those are an exception that fall within the shareholder standing rule. The courts disagreed. They looked at that economic injury to the employing entity in those three cases, and they did not accept the argument that, even though these are personal constitutional rights cases, that they would fall within the exception. And I would reiterate, in Pagan especially, plaintiffs advocated that the action, the retaliatory action, was directed at me personally, so therefore I fall within the shareholder standing exceptions. And the court disagreed. It doesn't, the analysis is plaintiffs, the most important part of the analysis is plaintiff's injury, not whether or not the government actor directed their recall. In Pagan, was that a 1983 action? Pagan, I believe, was a 1983 action, and it was brought against the governor of Puerto Rico. The First Amendment claim by the consultant was a First Amendment associational claim, but there were additional, I believe, other constitutional claims alleged was a sort of retaliatory associational First Amendment claim. Thank you. Mr. Gorman, let me ask you this. Can we look at this much like a termination? The city couldn't fire Ms. Calderon, but the city could fire her employer. Is that a way to look at this? I don't think that would be the way to look at this. It's admitted by both parties that this contract was up for renewal. RFPs were solicited, so the contract wasn't terminated. Well, there are suggestions in the complaint that that was all pretextual, correct? There were claims, but again, to the extent this contract was not renewed and or terminated, those claims belong to CNDC and not the plaintiff. Thank you. Thank you, counsel. Ms. Bangert? Yes, Your Honor. I'm just going to ask the court to maybe look at this concept of injuries a little differently. Injuries, because the cases talk about if you have the same injuries, then you can't bring the claim as an issue of redundancy. In Pagan and Duran and those cases, if the courts had found that the loan should be given or the contract would be renewed, then the plaintiffs would have gotten the damages that they sought, and they're just administrative fees, basically. Here, Ms. Calderon is asking for other relief, and that is relief from the chilling of her constitutional, her speech, harm to the reputation, loss of employment. So, if we look at the cases as matters of redundancy, then we have redundancy of injuries in the Duran and the Pagan case, but certainly not here. My time is up. I'm sorry, Your Honor. Thank you. Thank you, counsel. Thank you both for your arguments this morning. The case is submitted. Thank you, Your Honor. Thank you. Thank you.